14-2487
*UFCW Local One Pension Fund v. Enivel Properties, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2014

(Submitted: April 24, 2015      Decided: July 1, 2015)

Docket No. 14-2487

—————————

UFCW LOCAL ONE PENSION FUND, AND ITS TRUSTEES: FRANK C.
DERISO, JOHN P. BARRETT, ERIC GLATHAR, RAYMOND WARDYNSKI,
ROBERT BOEHLERT, AND KRISTINE WYDRO,

*Plaintiffs-Appellants,*

–v.–

ENIVEL PROPERTIES, LLC,

*Defendant-Appellee.*[*]

—————————

Before:

WESLEY, LIVINGSTON, AND CHIN, *Circuit Judges.*

—————————

_____

[*] The Clerk of the Court is directed to amend the caption of this case as set forth above.

Appeal from the United States District Court for the Northern District of New York (Suddaby, J.).  Plaintiffs-Appellants United Food and Commercial Workers Local One Pension Fund and its Trustees brought an action under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1453, against Defendant-Appellee Enivel Properties, LLC, seeking to recover a withdrawal liability assessment of a business under common control with Enivel.  After a bench trial, the district court determined that Enivel was not a "trade or business" and that withdrawal liability did not attach, and entered judgment for Enivel.  For the reasons that follow, we AFFIRM the district court's judgment.

Jeffrey S. Swyers, Barry S. Slevin, Paul E. Knupp, III, Slevin & Hart, P.C., Washington, D.C., *for Plaintiffs-Appellants*.

Glenn E. Pezzulo, William S. Levinson, Culley, Marks, Tanenbaum & Pezzulo, LLP, Rochester, NY, *for Defendant-Appellee*.

_____

WESLEY, *Circuit Judge*:

The issue in this appeal is whether a separate business organization can be held responsible for the liabilities of another commonly controlled entity under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453.

Steven Levine was the sole shareholder of Empire Beef Co., Inc. ("Empire"), a food-processing company.  Empire was party to a collective

bargaining agreement that required it to contribute to the United Food and Commercial Workers Local One Pension Fund (the "Fund") for retirement and related benefits for its employees. In November 2007, Empire effected a "complete withdrawal" from the Fund pursuant to 29 U.S.C. § 1383(a) and incurred a withdrawal liability assessment to the Fund of $1,235,644.00. The Fund sued Empire under the MPPAA for the assessment, as well as liquidated damages, interest, costs, and attorneys' fees, and secured a judgment against Empire for $1,790,343.90. Empire has not paid any portion of the judgment.

In addition to Empire, Steven and his wife, Lori, owned an investment company, Enivel Properties, LLC ("Enivel").[1] Steven held forty percent of Enivel's stock; Lori owned the remainder and was solely responsible for Enivel's business operations.[2] The Fund sued Enivel to recover on its judgment against Empire, alleging that Enivel is a trade or business under common control with Empire such that it is jointly and severally liable for Empire's withdrawal liability.

---

[1] "Enivel" is Levine spelled backwards.

[2] Lori is a licensed real estate broker. In addition to managing Enivel, Lori works for a separate entity, "Enivel Commercial Reality." J.A. 76.

To ensure the viability of multiemployer pension plans against the failure of a contributing employer, the MPPAA has broad provisions that disregard the usual legal barriers between affiliated, but legally distinct, businesses. All "trades or businesses" under "common control" are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another. *See* 29 U.S.C. § 1301(b)(1); *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 86 (2d Cir. 1997) (citing 29 U.S.C. § 1301(b)(1) and 26 C.F.R. §§ 1.414(c)-1 to -5).

Enivel was formed as a limited liability company, had an Employer Identification Number and a business checking account, and filed New York State tax returns. In its 2007 New York State tax return, Enivel reported a net loss in the amount of $2,275.00. Enivel owned three investment properties. The district court (Glenn T. Suddaby, Judge) found that Enivel was formed for the purpose of shielding the Levines from liability in case someone was injured on one of their properties. In addition, the court found it likely that Lori did not spend more than a few hours per year attempting to sell these properties or managing their leasing. There is no evidence in the record that any other

4

individuals spent more than a negligible amount of time acting on behalf of Enivel.

In May 2007, Enivel purchased a residential condominium unit in Rochester, New York (the "Rochester Condo"). The unit was originally purchased for the Levines' daughter. After the Levines' daughter moved out of New York, Enivel held the unit from 2007 to 2010 as an investment, leasing it periodically to tenants who responded to advertisements Lori posted on Craigslist. Lori testified that her purpose in leasing the property was to offset its carrying costs (including condominium association fees, property taxes, and insurance premiums) and that her hope was to "get rid of it" after it became clear that her daughter was not going to move in. J.A. 103. Enivel sold the Rochester Condo at a loss in 2010.

Enivel purchased a 5.2-acre parcel of unimproved land in Walworth, New York in 2004 (the "Walworth Property"). Enivel attempted to sell the Walworth Property by erecting a "For Sale" sign on the property, listing it with various brokers and websites, and cold-calling developers. The Walworth Property has not been leased or sold.

The third Enivel property is a 42-acre parcel of unimproved land in Ogden, New York (the "Ogden Property"). Enivel listed the Ogden Property for sale on LoopNet.com, a web-based commercial real estate marketplace, and leased it to a farmer to preserve the land against erosion and to offset its tax burden.

Applying the standard articulated in *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987), the district court determined that for an entity to be a "trade or business," it must operate "(1) for the primary purpose of income or profit, and (2) with continuity and regularity." *UFCW Local One Pension Fund v. Enivel Props., LLC* (*Enivel*), No. 6:11-CV-1144 (GTS/ATB), 2014 WL 2711660, at *5 (N.D.N.Y. June 16, 2014). Enivel failed both prongs of the "trade or business" definition, the district court concluded, first, because "while the secondary purpose of Enivel was for income or profit, the *primary* purpose of Enivel was personal." *Id.* at *8. In the alternative, the court concluded "that any income or profit activities engaged in by Enivel were not continuous and regular, but were interrupted and/or sporadic." *Id.* at *9. The Fund appealed.

DISCUSSION

We will not disturb findings of fact made by the district court unless they are clearly erroneous. Fed. R. Civ. P. 52(a); *Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*, 808 F.2d 982, 985–86 (2d Cir. 1987). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 870 (2d Cir. 1994) (internal quotation marks omitted). "However, the district court's application of those facts to draw conclusions of law . . . is subject to *de novo* review." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994).

Under the MPPAA, an employer incurs withdrawal liability when it withdraws from a multiemployer pension plan. *See* 29 U.S.C. § 1381(a). "The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers." *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988) (quoting H.R. Rep. No. 96-869, pt. 1, at 67 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 2918, 2935). The MPPAA thus "protect[s] the interests of participants and beneficiaries

in financially distressed multiemployer plans and . . . encourage[s] the growth and maintenance of multiemployer plans." *T.I.M.E.–DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 943 (2d Cir. 1985). Withdrawal liability discourages employers from evading their obligations to pension funds by fractionalizing or balkanizing their operations. *See Bd. of Trs. of the W. Conf. of Teamsters Pension Tr. Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987).

In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity; and (2) a "trade or business." *See* 29 U.S.C. § 1301(b)(1). Enivel does not dispute that Steven Levine controlled both Empire and Enivel. The only question in this appeal is whether Enivel is a "trade or business."

The district court correctly noted that section 1301(b)(1) does not define "trade or business." In light of the interpretive difficulties that arise with that phrase in cases such as this, several of our sister circuits, and the district court, have seen fit to employ the Supreme Court's reasoning in a tax case, *Groetzinger*, 480 U.S. at 35, for guidance in determining the types of conduct that constitute

8

engaging in a "trade or business." *See Connors v. Incoal, Inc.*, 995 F.2d 245, 250–51 (D.C. Cir. 1993); *Cent. States, Se. & Sw. Pension Fund v. Personnel, Inc.* (*Personnel*), 974 F.2d 789, 794 (7th Cir. 1992); *Enivel*, 2014 WL 2711660, at *5.

In *Groetzinger*, the Court considered the meaning of the phrase "trade or business" as it appears in section 162(a) of the Internal Revenue Code. 480 U.S. at 33–35; *see* 26 U.S.C. § 162(a) (1988) (providing for income tax deductions for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business"). *Groetzinger* explained that, "to be engaged in a trade or business, . . . the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." 480 U.S. at 35. The Court in *Groetzinger* confined its construction of the term "trade or business" to the tax statute at issue in that case and the Court "[did] not purport to construe the phrase where it appears in other places." *Id.* at 27 n.8. However, *Groetzinger* is useful to "distinguish trades or business from investments, which are not trades or business and thus cannot form a basis for imputing withdrawal liability under § 1301(b)(1)." *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson* (*Fulkerson*), 238 F.3d 891, 895 (7th Cir. 2001); *see also Personnel*, 974 F.2d at 794. *Groetzinger*'s construction of "trade or

9

business" is the most helpful authoritative pronouncement available, and worthy of reliance here. *See Connors*, 995 F.2d at 251. Accordingly, for an activity to be a "trade or business" under section 1301(b)(1), a person or entity must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity. *Groetzinger*, 480 U.S. at 35.[3]

The district court found that Enivel's primary purpose was "personal" and that profit was only a secondary purpose. Judge Suddaby noted that the Rochester Condo was originally purchased as a residence for the Levines' daughter and only after she moved away did Enivel lease the unit to tenants to offset the investment's carrying costs. Similarly, the district court found that the Walworth and Ogden properties were personal investments. There was no evidence that the Walworth Property was ever leased and Enivel's decision to lease the Ogden Property was simply to offset its carrying costs. For all three properties, the district court further found that the Levines' activity was not

---

[3] The relevant time period for evaluating whether an entity is a trade or business is the period before the employer withdraws from the pension fund. *See, e.g., McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 578 (7th Cir. 2007) (analyzing the business activity of the partnership the year it was established through the year of the employer's withdrawal); *Fulkerson*, 238 F.3d at 895–96 (same). Evidence from after the employer withdraws from the pension fund is relevant only insofar as it reveals the character of the entity at the time that it withdrew from the fund.

continuous or regular because it was likely that Lori's time spent managing, leasing, and trying to sell the properties was negligible.

On appeal, the Fund contends that Enivel's status as a separate juridical entity prohibited any conclusion that Enivel's purpose is "something other than the generation of income or profit." Appellant's Br. 20. In *Central States, Southeast & Southwest Areas Pension Fund v. White* (*White*), 258 F.3d 636 (7th Cir. 2001), the Seventh Circuit determined that renting two over-the-garage apartments on residential property was not a "trade or business" that could be held to account for the withdrawal liability of a commonly controlled trucking company that went bankrupt, even though the owners obtained tax benefits, satisfied their mortgage, and increased the equity in their property through rental income. *See id.* at 643.

The Fund contends that *White* is distinguishable because, unlike this case where the Levines formed a separate legal entity that owned the three properties (Enivel), the owner of the failed trucking company did not form a limited liability company to own and manage the rental units. We are unpersuaded. The Fund would have us hold that because Enivel is organized in a particular way, its primary purpose is inherently to generate income or profit without

11

regard for the entity's actual purpose. To the contrary, *Groetzinger* presents a holistic, fact-dependent inquiry that requires courts to examine the actions taken by the entity in addition to its formal status. While the organizational form of an entity is highly relevant to this inquiry, it is not always dispositive. Moreover, separate legal entities, even those not exempted from federal taxation by section 501(c) of the Internal Revenue Code, 26 U.S.C. § 501(c), can have legitimate purposes other than the generation of income, such as protecting personal assets from liability. Here, while Enivel was formally incorporated, the district court found that Enivel was not organized as a profit-making enterprise. Its activities were exceedingly limited and it operated at a loss. The district court's finding that Enivel is not a "trade or business" despite its juridical form is not legal error.

Next, the Fund argues that Enivel's activities could not have had a personal purpose because "there was no evidence or finding of any other purpose for Enivel's activities other than 'investments.'" Appellant's Br. 21. Clearly, most entities that acquire property do so as a way to make money. *See SEC v. W. J. Howey Co.*, 328 U.S. 293, 298 (1946) (defining "investment" as "the placing of capital or laying out of money in a way intended to secure income or profit from its employment" (internal quotation marks omitted)). But the Fund's

argument has no limiting principle. The Fund would have us hold that every entity that owns investment property necessarily satisfies the first prong of *Groetzinger*. To the contrary, the Seventh Circuit's decisions engage in searching explorations of the facts to discover what, exactly, was the entity's objective behind its investment choices. *See, e.g.*, *White*, 258 F.3d at 643; *Fulkerson*, 238 F.3d at 896–97. Here, the district court found that the Levines made real estate investments not to earn a living but for personal reasons or to further private wealth management objectives: housing for the Levines' daughter (Rochester Condo) and long-term personal investments (Walworth Property and Ogden Property).

Finally, the Fund contends that the district court's conclusion that Enivel had a personal and not-for-profit purpose was clearly erroneous in light of Enivel's admission that its purpose was to earn a profit. Enivel stipulated that its objective is to buy properties and later sell them at a higher price, realizing a profit. And, during the bench trial, Lori testified that Enivel was formed for the purpose of buying real estate to resell it at a profit. The Fund's argument is unpersuasive for two reasons. *First*, despite a profit motive, the facts show that Enivel made little or no effort to make money from the parcels it owned. While

13

Enivel's "intent" may have been clear, its efforts more accurately reflect the nature of its investments. *Second*, clear error is not shown by contrary evidence. The district court weighed and considered these "admissions." *See Enivel*, 2014 WL 2711660, at *2 (noting that "Enivel's purpose was to buy properties at one price and later sell them at a higher price, in order to realize a profit"). Yet the district court still concluded that Enivel's primary purpose was personal. The presence of competing evidence is insufficient to demonstrate clear error. *See United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949) (holding no clear error "where the evidence would support a conclusion either way but where the trial court has decided to weigh more heavily for the defendants").

The second prong of *Groetzinger* asks whether the putative trade or business operates regularly and continuously. "[P]ossession of a property, be it stocks, commodities, leases, or something else, without more is the hallmark of an investment" and not a trade or business activity. *Fulkerson*, 238 F.3d at 895. "Thus, mere ownership of a property (as opposed to activities taken with regard to the property) cannot be considered in determining whether conduct is regular or continuous." *Id.* at 895–96. The district court found that the Fund had not proved that Enivel did anything more than *de minimis* business activities. Judge

14

Suddaby noted that he was "left merely with discrete and vague pieces of testimony regarding property management" from which he was "unable to draw the reasonable inferences necessary to render a finding that any income or profit activities engaged in by Enivel were continuous and regular." *Enivel*, 2014 WL 2711660, at \*8.

On appeal, the Fund challenges the district court's factual conclusions on two grounds. *First*, the Fund contends that "Enivel's status and activities as a formal business entity demonstrate that its activities were not those of a passive investor." Appellant's Br. 26. This is a repackaging of the Fund's argument on prong one, and it fails for the same reasons. *Second*, the Fund argues that "the undisputed facts establish specific real estate activities performed by Enivel as to the properties it owned that . . . readily distinguish it from a passive investor." *Id.* at 26–27. The district court considered this argument and the evidence to which the Fund points and determined that the time Lori expended on these activities was *de minimis*. *Enivel*, 2014 WL 2711660, at \*8. Nor is there evidence in the record that any other individuals spent more than a negligible amount of

15

time doing work for Enivel.  The Fund's competing interpretation of this evidence does not show clear error.[4]

**CONCLUSION**

The MPPAA prevents employers from avoiding their pension obligations by balkanizing their business operations.  Although Enivel and Empire are commonly controlled, Enviel's limited leasing and sales activity was personal in nature—not primarily for profit—and Enivel did not operate continuously and regularly.  The Levines did not fragment their business operations over several entities.  Rather, Enivel's mission was primarily personal and any profit it derived was incidental.  We conclude that Enivel is not a "trade or business" for the purposes of the MPPAA.  The judgment of the district court is AFFIRMED.

---

[4] "Owning property can be considered a personal investment, at least where the owner spends a negligible amount of time managing the leases, although a more substantial investment of time may be considered regular and continuous enough to rise to the level of a 'trade or business.'" *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 878–79 (7th Cir. 2011) (citations omitted).