**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| AUTOMOTIVE INDUSTRIES PENSION TRUST FUND; et al., | No. 14-17371 |
| Plaintiffs-Appellants, | D.C. No. 3:13-cv-03703-WHO |
| v. | |
| TRACTOR EQUIPMENT SALES, INC., a California corporation, | MEMORANDUM[*] |
| Defendant, | |
| and | |
| STEVEN E. VAN TUYL, individually and as trustee of the The Van Tuyl 2003 Living Trust, as amended; RENA E. VAN TUYL, individually and as trustee of the The Van Tuyl 2003 Living Trust, as amended, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted December 12, 2016
San Francisco, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  HAWKINS, BERZON, and MURGUIA, Circuit Judges.

Automotive Industries Pension Trust Fund (the "Trust") appeals the grant of summary judgment to Steven and Rena Van Tuyl (the "Van Tuyls").  The Van Tuyls, husband and wife, owned a controlling interest in Tractor Equipment Sales ("TES"), which had been a participant in the multi-employer Trust prior to TES's withdrawal in 2011. The district court concluded the Trust could not enforce withdrawal liability under ERISA[1] against three rental properties owned by the Van Tuyls because they did not constitute a commonly-controlled "trade or business" under 29 U.S.C. § 1301(b)(1).

"Withdrawal liability" is assessed against the withdrawing employer, which includes not only the entity obligated to contribute to the pension plan, but also all "trades or businesses" that are under "common control" with that entity.  *See* 29 U.S.C. § 1301(b)(1).  Congress enacted section 1301(b)(1) "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Teamsters Pension Tr. Fund–Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987) (citation omitted); s*ee also Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir. 1988) ("The point of section 1301(b)(1) is simply to prevent the controlling group

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

2

of a company from avoiding withdrawal liability by shifting corporate assets into other business ventures under its control.").

ERISA does not define the term "trade or business," and we have noted that what constitutes a "trade or business" is an "essentially factual inquiry." *Id.* at 894 n.6. The American Heritage Dictionary defines "trade" as "an occupation, especially one requiring skilled labor" and "business" as "the occupation, work or trade in which a person is engaged." American Heritage Dictionary College Edition 220, 1284 (2nd Ed. 1991). Although § 1301(b)(1) may apply regardless of whether there is a formal corporate structure, employees, or some sort of economic relationship with the withdrawing employer (such as leasing property or equipment to the withdrawing entity), courts have been much more likely to find a "trade or business" under § 1301(b)(1) if these factors are present. *See, e.g, Lafrenz*, 837 F.2d at 894-95; *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 577-78 (7th Cir. 2007)*; Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson,* 238 F.3d 891, 895 (7th Cir. 2001).

None of these factors are present here. Additionally, the Van Tuyls have devoted little time to the real estate beyond depositing the income and performing minimal maintenance as required. As the district court noted, throughout the period of TES's participation in the Trust, "both the San Jose property and the Merced property were leased to a single, continuous tenant, while the Tahoe property was

3

either used as the Van Tuyls' own vacation home or was leased to friends and family." Indeed, it appears the San Jose property was purchased solely for the purpose of renting to a particular church group. And all of the properties in question were purchased many years (indeed, most by decades) before TES's withdrawal from the Trust.

The nature of the real estate activity in this case is thus more akin to holding a long-term income-producing investment. *See Fulkerson,* 238 F.3d at 896 (noting that § 1301(b)(1) does not impose automatic personal liability on owners of withdrawing entities, and that construing § 1301(b)(1) to reach all income-producing investments would eviscerate this limitation); *see also Bailey v. United States*, 360 F.2d 113, 116 (9th Cir. 1966) (where a statute does not define a term or it appears to have varying meanings depending on context, it should be construed in light of the purpose of the statute); *cf. Lafrenz,* 837 F.2d at 894 n.7 (not every passive investment is necessarily a trade or business).

On the particular facts of this case, we affirm the district court's grant of summary judgment to the Van Tuyls.

**AFFIRMED.**