In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3757

HOWARD MCDOUGALL and CENTRAL
STATES, SOUTHEAST AND SOUTHWEST
AREAS PENSION FUND,

*Plaintiffs-Appellees,*

*v.*

PIONEER RANCH LIMITED PARTNERSHIP
and ROBERT S. WHITING,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5908—**Suzanne B. Conlon**, *Judge.*

---

ARGUED MAY 25, 2007—DECIDED JULY 12, 2007

---

Before BAUER, CUDAHY, and FLAUM, *Circuit Judges.*

FLAUM, *Circuit Judge.* Elaine and Robert Whiting owned Pioneer Ranch Limited Partnership, a vacation property on which they farmed and raised cattle. The Whitings also owned a trucking company, which, after several years of operation, became bankrupt and ceased doing business. The Central States, Southeast and Southwest Areas Pension Fund ("the Fund"), a multi-employer pension fund, assessed substantial withdrawal liability on the trucking company, but could not collect any of

the amount owed. The Fund sued Pioneer Ranch and Robert Whiting for the withdrawal liability. The district court granted the Fund's motion for summary judgment, concluding that Pioneer Ranch was responsible for the trucking company's liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461 (1980). Pioneer Ranch appeals. For the following reasons, we affirm.

## I. BACKGROUND

### A. Statutory Background

Congress passed the MPPAA as an amendment to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1371. Under ERISA, the Pension Benefit Guaranty Corporation ("PBGC"), a government corporation, protects covered employees by insuring their benefits against fund insolvency or premature termination. Prior to 1980, ERISA's contingent liability provisions gave employers an incentive to withdraw from financially weak multi-employer plans to avoid liability if the plan terminated in the future. As a result, the PBGC reported to Congress that the premiums paid to it were insufficient to cover its expected future liabilities. Congress then passed the MPPAA, seeking to discourage voluntary withdrawals from multi-employer plans by imposing a mandatory liability on all withdrawing employers. *See Cent. States, Se. and Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992). The Act holds such employers liable for their proportionate share of "unfunded vested benefits." 29 U.S.C. § 1381.

Upon an employer's withdrawal from a plan, the trustees of the fund must promptly determine the amount of an employer's liability and create a payment schedule. Within 90 days of notification, the employer may request that

the trustees review their determination. 29 U.S.C. § 1399(b)(2)(A). If either party is dissatisfied with the outcome of the review, the MPPAA mandates arbitration proceedings. 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor . . . shall be resolved through arbitration."). After arbitration, or if no arbitration proceeding has been initiated, either party may bring an action in federal district court "to enforce, vacate, or modify the arbitrator's award." 28 U.S.C. § 1401(b)(2).

Section 1301(b)(1) provides that all "employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1). Under this section, each trade or business under common control is jointly and severally liable for the withdrawal liability of the others. *See Ditello*, 974 F.2d at 889.

## B.  Facts

In 1970, Robert and Elaine Whiting[1] purchased property located in Cheboygan County, Michigan to use as a vacation home. The Whitings kept a number of cattle and other livestock on the property and conducted some farming and ranching activities. In 1973, the Whitings hired David McCormick to care for the property and assist with the farming and livestock. Over the next twenty years, the Whitings used the property as a vacation home and developed a small cattle herd by buying and selling a few cattle each year.

In 1993, the Whitings established the Pioneer Ranch Limited Partnership. Elaine and Robert were both general

---

[1]  Elaine Whiting died on January 5, 2005, and Robert Whiting died on February 4, 2006.

and limited partners, and their four children, R. Scott Whiting, Daniel Whiting, Jo Ann Skandalaris, and Jane Whiting were limited partners. Pioneer Ranch's partnership agreement stated that the partnership's purpose was as follows:

a)  acquiring and holding certain real property located in the Township of Aloha, Cheboygan County, Michigan, heretofore owned and managed as a cattle farm by the General Partners.

(b)  acquiring additional real and personal property to be used in operating, managing, and expanding the Property, and to engage in the business of farming, ranching, and any agricultural pursuit or undertaking; and

(c)  doing any and all things and carrying on any and all other activities necessary, convenient, or incidental to accomplish any of the preceding purposes and powers or to protect and benefit the Partnership.

After the Whitings established the partnership, they handled the livestock on the ranch the same way they handled it before 1993.

From 1994 through 2003, Pioneer Ranch filed tax returns that contained a schedule listing profits and losses from farming. The schedule indicated that Pioneer Ranch lost money every year after the Whitings established the partnership. On its tax returns, the partnership listed "cattle farm" as its principal business activity, claimed farm expenses, and certified that it was entitled to an agricultural production exemption.

The Whitings also owned a trucking company called Whiting Distribution Services ("WDS"), which operated in Detroit, Michigan. In 2003, WDS, which had been experiencing financial difficulties, entered bankruptcy

and wound up its operations. WDS was subject to a series of collective bargaining agreements requiring pension contributions to the Fund. On December 6, 2003, WDS withdrew from the Fund. On January 30, 2004, the Fund demanded that the Whiting Controlled Group pay $3,708,184.81 worth of withdrawal liability pursuant to ERISA, 29 U.S.C. §§ 1382(2) and 1399(b). On August 23, 2005, the Fund issued another notice and demand to the Whiting Controlled Group that was served on Pioneer Ranch and Robert Whiting. On February 15, 2006, the Whiting Controlled Group, through Pioneer Ranch, received a notice that the withdrawal liability payments were past due. When the Whiting Controlled Group failed to pay the withdrawal liability, the Fund filed suit in federal district court, arguing that it could collect the withdrawal liability from Pioneer Ranch and Robert Whiting because Pioneer Ranch was a "trade or business" under § 1301(b)(1).

On June 15, 2006, the parties filed cross-motions for summary judgment. On July 20, 2006, the district court granted the plaintiffs' motion for summary judgment and denied the defendants' motion, holding that Pioneer Ranch was a trade or business under § 1301(b)(1).

## II. DISCUSSION

### A. Standard of Review

The initial question presented in this case is the standard by which we review the district court's decision. We ordinarily review a district court's grant of summary judgment in an ERISA case de novo. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 460 (7th Cir. 1997). However, in *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373-74 (7th Cir. 1992), this Court held that the clearly erroneous standard of

review applies when the only issue before the district court is the characterization of undisputed subsidiary facts and where a party does not have the right to a jury trial. In *Slotky*, the Court stated that although the fact of whether or not an enterprise is a trade or business is not ordinarily resolved on summary judgment, "[delaying judgment] does not make sense in a case in which the only factual issue is one of characterization, . . . and the opponent of summary judgment claims no right to a jury trial." *Id.* at 1374. In that scenario, "both the record and the fact-finder are the same in the summary judgment proceeding as they would be in a trial. There is no more evidence to put in and no different trier to evaluate it." *Id.* As we explain below, there is no dispute over the underlying facts in this case. Thus, to determine the appropriate standard of review, we must analyze whether the defendants are entitled to a jury trial.[2]

The Seventh Amendment provides that "[in] Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has long understood "'suits at common law' to refer not merely to suits that the common law recognized among its old and settled proceedings, but to suits in which legal rights were to be ascertained and determined, in contrast to those where equitable rights and remedies were recognized." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (quoting *Parsons v. Bedford*, 28 U.S.

---

[2] The appellants stated that they were entitled to a jury trial while the appellees contended that they were not entitled to one, but neither party explained *why* the appellants were or were not entitled to a jury trial. Indeed, both parties presented deficient arguments for their preferred standard of review. Accordingly, it falls to us to reach the merits of the jury trial issue in order to determine the appropriate standard of review.

433, 447 (1830)). The general rule in ERISA cases is that there is no right to a jury trial because "ERISA's antecedents are equitable," not legal. *Matthews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998). However, § 4301(a)(1) permits plan fiduciaries, employers, participants, or beneficiaries to bring civil suits under Title IV of ERISA and seek appropriate legal or equitable relief with respect to a multi-employer plan. 29 U.S.C. § 1451(a)(1). Though § 4301(a)(1) provides for both legal and equitable remedies in the case of multi-employer pension plan disputes, the few courts that have considered the question have determined that the Seventh Amendment does not guarantee a jury in these types of cases. *See Connors v. Ryan's Coal Co.*, 923 F.2d 1461 (11th Cir. 1991); *Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc.*, 749 F.2d 1396 (9th Cir. 1984).

In *Thompson Building Materials, Inc.*, the Ninth Circuit held that Congress did not violate the Seventh Amendment by requiring employers and plan sponsors to resolve disputes about withdrawal liability through arbitration. 749 F.2d at 1405. The court held that the MPPAA's statutory scheme was not known to the common law, and that Congress may delegate fact-finding functions to non-jury bodies in cases involving newly created statutory rights. *Id.* Likewise, in *Connors*, the Eleventh Circuit held that the defendant was not entitled to a jury in a withdrawal liability collection action brought by multi-employer plan trustees. 923 F.2d at 1465. The court stated that the MPPAA's mandatary arbitration provisions did not unconstitutionally deprive the liable employer of its right to a jury trial. *Id.*

We agree with the reasoning of our sister circuits. If Pioneer Ranch had proceeded to arbitration to challenge its status as an employer it would not have been entitled

to a jury. It is anomalous then to allow the defendants to have a jury trial simply because they avoided the dispute resolution scheme that Congress contemplated in the statute. Because the defendants are not entitled to a jury trial, the Court must review the district court's grant of summary judgment for clear error.

## B.  Trade or Business

To impose withdrawal liability on an organization other than the one obligated to the Fund, two conditions must be satisfied: 1) the organization must be under "common control" with the obligated organization, and 2) the organization must be a trade or business. *Cent. States, Se. and Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). The defendants do not dispute that the Whitings controlled both WDS and Pioneer Ranch. The only question, therefore, is whether Pioneer Ranch constitutes a trade or business.

Although the MPPAA does not define "trade or business," this Court has adopted the test established in *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987), to determine whether an enterprise constitutes a trade or business. *See Cent. States, Se. and Sw. Areas Pension Fund v. White*, 258 F.3d 636, 642 (7th Cir. 2001); *Fulkerson*, 238 F.3d at 895. Under *Groetzinger*, the Court must consider whether the person engaged in an activity 1) for the primary purpose of income or profit and 2) with continuity and regularity. 480 U.S. at 35. The phrase "trade or business" "does not encompass purely personal activities no matter how continuous or extended the activity may be nor how profitable . . . ." *White*, 258 F.3d at 642 (internal quotation omitted). Additionally, "a sporadic activity, a hobby, or an amusement diversion does not qualify." *Groetzinger*, 480 U.S. at 35.

The parties focus their dispute on whether the Whitings engaged in ranching and farming primarily for the purpose of income or profit. The defendants contend that the Whitings operated Pioneer Ranch for purely personal reasons, as a vacation home and retreat, and created the partnership for estate planning purposes.[3] Additionally, they point out that the Whitings owned the land that became Pioneer Ranch for twenty-two years prior to establishing the partnership and that the manner in which they handled the livestock and farming on the ranch did not change in any way from the manner in which it was handled before 1993. They also emphasize that the Whitings suffered significant losses for nine straight years after they established the partnership, and that the property's tennis courts, shuffleboard court, and trout pond all demonstrate that the Whitings intended Pioneer Ranch to be a vacation home because those things have nothing to do with ranching or farming. Finally, they allege that the Whitings acquired land that was largely unsuitable for either ranching or farming because Pioneer Ranch was an investment, not a trade or business.

By contrast, the Fund emphasizes the partnership agreement, which stated that the business purpose of Pioneer Ranch was "to engage in the business of farming, ranching, and any agricultural pursuit or undertaking . . . ." Courts have held that "a defendant's stated intention of forming a business is highly relevant, because

---

[3] The four Whiting children each testified that their parents told them that they established Pioneer Ranch Limited Partnership on the advice of their accountants and lawyers. Though the children's testimony is inadmissible hearsay, there is admissible evidence that the Whitings established Pioneer Ranch for estate planning purposes. Each year the Whitings gave their children un-taxable gifts of land, which is consistent with estate planning.

it constitutes a declaration against interest." *See, e.g.*, *Connors*, 995 F.2d at 254. The Fund also points out that the Whitings constructed fences to hold cattle, sold livestock and grains, employed one full-time employee and two part-time employees, and provided the employees with health, retirement, and workers' compensation benefits. They also highlight the fact that the Whitings' tax returns claimed business exemptions and deductions for farming expenses each year. Moreover, from 1994 through 2003, Pioneer Ranch represented that its principal business activity was cattle farming and that it generated an annual income of $20,000.

On these undisputed underlying facts, the district court held that Pioneer Ranch is a trade or business. Even if this Court might have interpreted the facts differently, a fact finder could reasonably consider the documentary evidence of the Whitings' intent and conclude that they engaged in the activities on Pioneer Ranch for the primary purpose of income or profit and simply derived incidental personal benefit from Pioneer Ranch.

The defendants maintain that it would be fundamentally unfair to impose withdrawal liability on Pioneer Ranch.[4] They argue that, as in *Fulkerson* and *White*, this Court should reverse summary judgment. *Fulkerson* and *White* are readily distinguishable from this case because they addressed legal errors about whether the activities in those cases were sufficiently regular and continuous, an issue that is undisputed in this case.

Because there are no disputed facts and the defendants are not entitled to a jury trial, if the Court remands the

---

[4] We note that parties are responsible for whatever legal consequences attach to their own choice of business organization. *See Connors*, 995 F.2d at 254.

case for a trial, the same trier of fact will consider the same evidence on which it already concluded that no fact-finder could reasonably find that Pioneer Ranch was not a trade or business. Because the district court committed no errors of law, and a reasonable fact finder could conclude that Pioneer Ranch was a trade or business, the district court did not commit clear error.

## III. CONCLUSION

For the above reasons, we AFFIRM the district court's grant of summary judgment to the plaintiffs.

CUDAHY, *Circuit Judge*, concurring in the judgment. It is somewhat doubtful whether Congress's intent as to the legitimate purposes of withdrawal liability under the Multiemployer Pension Plan Amendments Act is being properly served here. The majority correctly states that a "trade or business," as defined in *Commissioner of Internal Revenue v. Groetzinger*, requires as its "primary purpose" the realization of "income or profit." 480 U.S. 23, 35 (1987). There is no *clear error* in the district court's conclusion that Pioneer Ranch was primarily intended to make a profit, but the continued existence of the "ranch" in the face of relentless losses suggests otherwise, its founding agreement and tax filings notwithstanding. A reasonable jury could conclude that Pioneer Ranch was a vacation home enhanced by a few livestock and inflated to the status of a "ranch" for tax purposes.

As the majority notes, this makes the case turn on whether Pioneer Ranch is entitled to a jury trial on the fund's claim for withdrawal liability. (Op. at 6-8.) The centrality of this issue entitles it to a degree of rigorous attention to which neither the majority nor, it should be noted, the parties have subjected it. (Although Central States has asserted that Pioneer Ranch is not entitled to a jury trial, and Pioneer Ranch has asserted the contrary, neither has done much to explain why such a right should or should not exist.)

The majority concludes that Pioneer Ranch is not entitled to a jury because it "avoided the dispute resolution scheme that Congress contemplated in the statute," that is, private arbitration described in 29 U.S.C. § 1401(a)(1). (Op. at 8.) But, whatever it would mean for Congress to "contemplate" arbitration, this court has determined that Congress has not always *required* that every issue in a dispute between a fund and an employer be arbitrated. In *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, we held that "the issue of membership in a controlled group," the very issue that Pioneer Ranch disputes in this case, "cannot be within *exclusive* arbitral jurisdiction. For then people who had absolutely no reason to believe that they might be deemed members of a controlled group would be foreclosed from litigating the issue in any forum." 956 F.2d 1369, 1373 (7th Cir. 1992). We suggested that some defendants might still be required to arbitrate the issue, for instance "if the pension plan explicitly notifies the person of his potential liability," dispelling any notice concerns, but the issue is sometimes properly decided by courts in the first instance. *Id.*; *cf. Central States, Se. & Sw. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 n.1 (7th Cir. 1992) (suggesting that a defendant is never required to arbitrate employer status).

If Pioneer Ranch has not evaded any congressionally-required arbitration, it is not clear why its failure to pursue arbitration barred it from jury trial; Pioneer Ranch could have plausibly argued that it has a Seventh Amendment right to a jury trial in the federal courts, and the availability of a jury trial often depends on the litigants' choice of the forum in which their dispute will be resolved. *See, e.g., Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (per curiam); *Statland v. United States*, 178 F.3d 465, 472-73 (7th Cir. 1999). When Congress "provides for enforcement of statutory rights in an ordinary civil action in the district courts," the Seventh Amendment applies and "a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether*, 415 U.S. 189, 195 (1974); *cf. Granfinanceria, S.A. v. Norderg*, 492 U.S. 33, 52-53 (1989) (explaining that the Seventh Amendment does not apply to disputes that Congress assigns "to a forum in which jury trials are unavailable"). While it may not be entirely clear whether an action for MPPAA withdrawal liability involves such rights and remedies, it is certainly a respectable candidate for them. Money damages are a typically legal remedy, and we have previously held that the Seventh Amendment provides a jury right when a union trust fund seeks contractually required contributions from an employer. *See Bugher v. Feightner*, 722 F.2d 1356, 1357-60 (7th Cir. 1983).

This is not to say that the majority's reasoning is incorrect. It might be that Central States' suit is not an "*ordinary* civil action," even though it is heard in the district courts, *Curtis*, 415 U.S. at 195 (emphasis added), or it might be that the Seventh Amendment does not ensure a jury trial even if it applies. But I think the issue remains somewhat obscure and need not be resolved in the present case. Pioneer Ranch seems to have forfeited the jury trial issue on appeal by failing to support

it with any sort of citation to authority or argument. *Central States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 670 (7th Cir. 2005); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). (The Fund has done almost as little to explain its assertion that Pioneer Ranch had no right to a jury trial, but it has at least cited to *Central States, Se. & Sw. Pension Fund v. Personnel, Inc.*, which by omitting any discussion of the jury issue from its determination of the standard of review arguably suggests that a jury right does not exist. 974 F.2d 789, 792 (7th Cir. 1992).) Even if it had not waived the issue on appeal, Central States "explicitly notifie[d] [Pioneer Ranch] of [its] potential liability" under the MPPAA, which suggests that it might have been required to arbitrate its control group membership. *Central States, Se. & Sw. Areas Pension Fund vs. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992). If so, the majority is correct and it has no right to a jury trial.

I would therefore not reach the general issue of whether there is a right to a jury trial in lawsuits to recover MPPAA withdrawal liability under 29 U.S.C. § 1401(b)(1). I otherwise agree with the majority opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*