In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3633

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND, *et al.*,

*Plaintiffs-Appellees,*

*v.*

SCOFBP, LLC, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-05941—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 21, 2011—DECIDED DECEMBER 27, 2011

Before EASTERBROOK, *Chief Judge*, and TINDER and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The issues in this appeal
govern whether two solvent business entities can be
held responsible for the liabilities of an insolvent
affiliate under the Multiemployer Pension Plan Amend-
ments Act of 1980, 29 U.S.C. §§ 1381-1461. The insolvent
employer in the pension plan is defendant-appellant

SCOFBP, LLC, which incurred withdrawal liability in 2001 for unfunded pension benefits when it stopped operating and paying into a union's pension fund, plaintiff Central States, Southeast and Southwest Areas Pension Fund. The solvent affiliates are defendant-appellants MCRI/Illinois, LLC and MCOF/Missouri, LLC. They and SCOFBP were part of a complex set of business entities and off-shore trusts under the control of Michael Cappy, a businessman who went through personal bankruptcy in 1999.

To protect the solvency of multiemployer pension plans, the Multiemployer Pension Plan Amendments Act of 1980, also known as the MPPAA, contains broad provisions that pierce the usual legal barriers between affiliated but legally distinct businesses. Under the MPPAA, all "trades or businesses" under "common control" are treated as constituting a single employer for purposes of determining withdrawal liability. 29 U.S.C. § 1301(b)(1). Each trade or business under common control is jointly and severally liable for any withdrawal liability of any other. See *McDougall v. Pioneer Ranch Ltd. Partnership*, 494 F.3d 571, 574 (7th Cir. 2007); *Central States, Southeast and Southwest Pension Fund v. Ditello*, 974 F.2d 887, 889 (7th Cir. 1992).[1]

The district court held here that the solvent MCRI and MCOF were both trades or businesses that were under common control with insolvent SCOFBP at the relevant

---

[1] For a more extensive discussion of the MPPAA see *Pioneer Ranch*, 494 F.3d at 574, and *Ditello*, 974 F.2d at 888.

times, so that both MCRI and MCOF are liable for SCOFBP's withdrawal liability. *Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*, 738 F. Supp. 2d 840 (N.D. Ill. 2010). All three entities appeal from that determination, arguing first that MCRI and MCOF were only passive investment vehicles rather than trades or businesses, and second that Cappy's personal bankruptcy disrupted what had been common control of the three entities. We reject both arguments and affirm the judgment in favor of the pension plan against all three entities.

I. *Standard of Review*

The district court granted summary judgment in favor of the pension plan, finding that there was no genuine issue as to any fact material to whether MCRI and MCOF are businesses or as to whether they were under common control with SCOBFP at the relevant time. We ordinarily review a district court's grant of summary judgment in an ERISA case de novo. *Pioneer Ranch*, 494 F.3d at 575. When, however, the only issue before the district court is the characterization of undisputed subsidiary facts, and where a party does not have the right to a jury trial, the clearly-erroneous standard of review applies. *Id.* Appellants argue that the de novo standard of review should apply because they claim there are significant issues of material fact, but they have not pointed to any specific facts in dispute that would require a trial. The parties agree on the activities in which MCRI and MCOF were engaged. The parties also

agree on ownership of SCOFBP, MCRI, and MCOF at all relevant points in time. We thus review the district court's characterization of these undisputed facts for clear error, though we would reach the same result even if we applied de novo review here.

## II. *Trades or Businesses*

We first address whether the solvent affiliated organizations MCOF and MCRI are "trades or businesses" within the meaning of the MPPAA. The district court did not err in finding that they are.

Appellant MCOF owned the lumberyard in O'Fallon, Missouri that was used and leased by SCOFBP. Appellant MCRI held and continues to hold parcels of land in Rock Island, Illinois, which it leases to a third-party company. Both MCRI and MCOF are for-profit limited liability companies. Each has an operating agreement detailing the type of business the company intends to conduct, initially "to hold real estate and investments approved by the Manager." Payments on the triple-net leases held by MCRI and MCOF were paid into their bank accounts and the mortgage payments were withdrawn from them.[2] Both applied for and were issued federal employer identification numbers. Both main-

---

[2] A "triple-net lease" is one in which the tenant is responsible for most obligations such as maintenance, operating expense, real estate taxes, and insurance. See *Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 893 (7th Cir. 2001).

tained offices, elected officers, and kept formal records of activities and expenditures. Both employed professionals to provide legal, management, and accounting services on a contract basis, although neither admitted to having any permanent employees.

Although the MPPAA does not define "trade or business," this court has adopted the test established in *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987), to determine whether an enterprise constitutes a trade or business. Under *Groetzinger*, the Court must consider whether the organization engaged in an activity (1) with continuity and regularity and (2) for the primary purpose of income or profit. *Id.* These criteria are intended to distinguish a trade or business from investments, hobbies, or "amusement diversion[s]." *Groetzinger*, 480 U.S. at 35; *Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001).

Appellees argue that *Groetzinger* is inapplicable here because MCRI and MCOF were established as limited liability companies. That argument finds support in some case law. See *Fulkerson*, 238 F.3d at 895 ("Section 1301(b)(1) presents no interpretive difficulties when it is used to impute withdrawal liability to another corporation or other formally recognized business organization that is under common control with the obligated entity."). Because formal business organizations ordinarily operate with continuity and regularity and are ordinarily formed for the primary purpose of income or profit, it seems highly unlikely that a formal for-profit business organization would not qualify as a "trade or business"

under the *Groetzinger* test. More recently than *Fulkerson*, however, we have applied the *Groetzinger* test to a formal business organization, see *Pioneer Ranch*, 494 F.3d at 577 (applying *Groetzinger* test to hold that a limited partnership was a trade or business), so we do so here.

In evaluating whether an enterprise meets the *Groetzinger* test, we are mindful of the purpose of the MPPAA, which is to "prevent the dissipation of assets required to secure vested pension benefits." *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1374 (7th Cir. 1992); see also *Ditello*, 974 F.2d at 890. For example, leasing property to a withdrawing employer is a "trade or business" within the meaning of the MPPAA. Leasing property "is an economic relationship that could be used to . . . dissipate or fractionalize assets*." Ditello*, 974 F.2d at 890.

Unrelated real estate activity, even activity that does not produce a net gain, also can be "for the primary purpose of income or profit" where that activity increases equity, appreciates value, and generates tax deductions that reduce the overall tax burden. *Central States, Southeast and Southwest Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 795-96 (7th Cir. 1992). Actions such as negotiating leases or researching, maintaining, or repairing properties are also "business or trade conduct" and should be considered for the "continuity and regularity" prong of the *Groetzinger* test. See *Fulkerson*, 238 F.3d at 895. Additionally, creating a formal business entity, having employees, and claiming business exemptions and deductions also point to a "trade or business." *Pioneer Ranch*, 494 F.3d at 577-78.

In contrast, personal investments are things like holding shares of stock or bonds in publicly traded corporations. *Personnel*, 974 F.2d at 796. Ownership of this type of property "without more is the hallmark of an investment." *Fulkerson*, 238 F.3d at 895. Owning property can be considered a personal investment, at least where the owner spends a negligible amount of time managing the leases, see *id.* at 896, although a more substantial investment of time may be considered regular and continuous enough to rise to the level of a "trade or business," see *Personnel, Inc.*, 974 F.2d at 795. Likewise, renting apartments above a residential garage was held not to be a "trade or business," even when the owner realized income, where the owner's primary purpose for renting the apartments was the added security from the tenant's presence. *Central States, Southeast and Southwest Areas Pension Fund v. White*, 258 F.3d 636, 643 (7th Cir. 2001).

Appellants argue that MCRI and MCOF were Cappy's personal investment activities and had no connection with SCOFBP. The MPPAA does not, however, require an economic nexus between the obligated organization and trades or businesses under common control, and we have declined to impose such a non-statutory requirement. *Fulkerson*, 238 F.3d at 895 n.1; see also *White*, 258 F.3d at 641 (again rejecting an economic nexus requirement). Furthermore, we have held that leasing property to a withdrawing employer itself is categorically a "trade or business." *Ditello*, 974 F.2d at 890. Thus, the district court did not err by holding that MCOF, which owned the lumberyard that

was used and leased by withdrawing employer SCOFBP, is a "trade or business" for purposes of the MPPAA.

The district court also did not err by holding that MCRI is a trade or business for purposes of the MPPAA. Appellants argue that MCRI is a personal investment analogous to the individually-owned leased property in *Fulkerson* or the above-the-garage rental apartments in *White*. *Fulkerson* and *White*, however, presented unusual situations that tested the outer bounds of the "personal investment" concept. Unlike the activity at issue in *Fulkerson* or *White*, MCRI is a for-profit LLC. It earned rental income, paid business management fees, and claimed business-related income deductions on its federal income tax returns. It applied for and was issued a Federal Employer Identification Number and con-tracted with professionals to provide legal, management, and accounting services on a contract basis, although it does not admit to having any permanent employees. Thus, MCRI is more akin to the limited partnerships at issue in *Pioneer Ranch*.

Appellants attempt to distinguish *Pioneer Ranch*, where we determined that a limited partnership was a "trade or business," by calling attention to the part of the part-nership agreement in that case stating that the purpose of the company was to engage in the business of farming. Appellants claim that there is no similar statement by MCRI or MCOF in this case. The district court, however, pointed to analogous language both from MCRI and MCOF's operating agreements and from a response by appellants to a request for admission. All clearly

stated that MCRI and MCOF are businesses created for the primary purposes of generating income or profit.

MCOF leased property directly to SCOFBP, the withdrawing employer, and therefore is a "trade or business" for the purposes of the MPPAA. MCRI, also a formal business organization, engaged in regular and continuous activity for the purpose of generating income or profit and thus is also a "trade or business" for purposes of the MPPAA.

III. *Common Control*

Next we must determine whether the solvent organizations, MCOF and MCRI, were under common control with the insolvent organization, SCOFBP. We find that common control existed at the relevant time. The network of related entities is complex, but the ultimate issue is straightforward: whether MCOF and MCRI should be treated as part of Michael Cappy's bankruptcy estate when SCOFBP withdrew from the pension plan on October 20, 2001.

Appellant SCOFBP was the operator of a now-defunct lumber yard and milling company and is one of a number of business entities linked to Cappy. Prior to January 19, 1999, Cappy owned 100% of Southern Cross, and Southern Cross owned 98% of SCOFBP. Cappy personally owned 1% of SCOFBP. The remaining 1% was owned by the MCL Family Trust III, a foreign trust settled by Cappy under the laws of the Cook Islands.

Appellant MCOF owned the lumberyard in O'Fallon, Missouri that was used and leased by SCOFBP. Prior

to January 19, 1999, MCOF was owned 51% by MCOF,
Inc. (which was owned 100% by MCL Family Trust III),
48% by MCL Family Trust II, a foreign trust settled
by Cappy under the laws of New Zealand, and 1% by
Cappy.

Appellant MCRI owned and continues to own parcels
of land in Rock Island, Illinois that it leases to an
unrelated company. Prior to January 19, 1999, MCRI was
owned 71% by MCL Family Trust III, 28% by MCL Family
Trust II, and 1% by Cappy.

On January 20, 1999, Cappy filed for Chapter 11 bank-
ruptcy in the United States District Court for the
Western District of Kentucky.[3] In August 2002, after
SCOFBP had withdrawn from the pension plan, the
United States Bankruptcy Court for the Western District
of Kentucky determined that Cappy's transfers to the
MCL Family Trusts had been fraudulent and that all
of the trust assets, including their ownership interests
in the three appellants, were therefore properly part of
the Cappy bankruptcy estate. *Vesper v. MLC Holdings, LLC*
(*In re Cappy*), No. 99-31466-(7)-L, at 23 (Bankr. W.D. Ky.
Aug. 28, 2002). Under that reasoning, 100% of MCRI and
100% of MCOF were part of the bankruptcy estate, which
also included 100% of SCOFBP. Cappy appealed the
bankruptcy court's decision, which was affirmed by the
Kentucky district court in February 2004, although on
somewhat narrower grounds. See *Cappy v. Vesper* (*In re*

---

[3] The bankruptcy was converted into a Chapter 7 bankruptcy
on May 18, 2001.

*Cappy*), No. 3:03CV-6-H at 26 n.29 (W.D. Ky. Feb. 5, 2004) ("Since all the assets remaining in the trusts are properly part of Cappy's estate pursuant to 11 U.S.C. § 541(a)(1) and KRS 381(7)(a), it seems unnecessary to find that the transfers of the same property into the trusts were invalid. Under either theory, the transfers will be a part of Cappy's estate.").

To impose the insolvent organization's liability on a related solvent organization, the insolvent organization must have been under "common control" with the related solvent organization. The MPPAA draws its definition of "common control" from the regulations promulgated under § 414(c) of the Internal Revenue Code. 29 U.S.C. § 1301(b)(1). The Internal Revenue regulations set out three ways a group of trades or businesses can be commonly controlled — a parent-subsidiary group, a brother-sister group, or a "combined" group consisting of both parent-subsidiary and brother-sister relationships. 26 C.F.R. § 1.414(c)-2(a). The only potentially applicable formation in this case is the parent-subsidiary group. A parent-subsidiary group exists when a common parent owns a "controlling interest" in the relevant subsidiary organizations. 26 C.F.R. § 1.414(c)-2(b)(1). A "controlling interest" is defined for these purposes as at least 80% ownership. 26 C.F.R. § 1.414(c)-2(b)(2).

Appellants argue that there was no common control of SCOFBP, MCRI, and MCOF at the time SCOFBP incurred withdrawal liability on October 20, 2001 because Cappy did not have common control at that time.

SCOFBP was under the control of the bankruptcy estate. Appellants argue that MCRI and MCOF were then under the control of the MCL Family Trusts or, in the alternative, under the control of Cappy himself. We agree that Cappy personally was not in control of SCOFBP, MCRI, and MCOF as of the date SCOFBP incurred withdrawal liability, but that does not mean that common control did not exist.

As the district court explained, prior to January 1999, each company was under Cappy's control through the rather elaborate web of ownership interests that Cappy wove through the MCL Family Trusts. See *SCOFBP*, 738 F. Supp. 2d at 846-47. Notwithstanding the MCL Family Trusts' labels as trusts, they were settled under the laws of foreign nations that permitted Cappy a degree of involvement and control not permitted the settlor of a trust by the laws of any U.S. state. Among those trust assets were controlling interests in MCOF and MCRI. There is no doubt that after February 2004, when the district court affirmed the bankruptcy court's finding that the assets held by the MCL Family Trusts were properly part of Cappy's bankruptcy estate, SCOFBP, MCRI, and MCOF were under common control, as defined by the Internal Revenue Code regulations. The bankruptcy estate is a common parent with a 100% controlling interest in each of the three organizations. Our task is to determine whether common control existed on October 20, 2001, the date SCOFBP incurred withdrawal liability, which was after Cappy declared bankruptcy but before the Kentucky district court affirmed the bankruptcy court in February 2004.

Appellants criticize the Illinois district court for relying on the "after-the-fact" decision of the bankruptcy court in Cappy's personal bankruptcy, and further urge that the Kentucky district court's opinion affirming the bankruptcy court limited the reach of the decision to Cappy's personal creditors. This argument is not persuasive. The Bankruptcy Code broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case," carving out some exceptions for property of a type not at issue here. 11 U.S.C. § 541(a)(1). As the Illinois district court noted, after Cappy filed for bankruptcy in January 1999, controlling interests in MCRI and MCOF would have passed into the common control of Cappy's bankruptcy estate but for the fraudulent conveyance of his interests to the MCL Family Trusts. *SCOFBP*, 738 F. Supp. 2d at 847.

If the courts had issued their decisions before SCOFBP closed on October 21, 2001 and incurred withdrawal liability, there would be no question that the bankruptcy estate had common control over SCOFBP, MCRI, and MCOF at that time. A fundamental purpose of ERISA is to protect employees who have been promised retirement benefits from employers who seek to avoid their responsibilities to pay such benefits. When the bankruptcy and district courts ruled on the scope of the bankruptcy estate, they were exercising equitable power to pierce transactions that had been used improperly to shelter assets from creditors. It simply stands to reason that a creditor under the MPPAA is entitled to rely on the later court deci-

sion piercing those transactions. We will not permit Cappy to thwart the purpose of ERISA and the MPPAA based on the fact that the bankruptcy court and the district court took time to fully and fairly adjudicate his tangled personal bankruptcy. Because MCRI and MCOF were adjudged to be properly part of the Cappy bankruptcy estate, the district court did not err by finding that SCOFBP, MCRI, and MCOF were under "common control" for ERISA purposes at the time SCOFBP incurred withdrawal liability.

The judgment of the district court is AFFIRMED.