In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2142

LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS
PENSION FUND,

*Plaintiff-Appellee,*

*v.*

ANTHONY PITELLO and PAT PITELLO,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CV 6893 — **Joan H. Lefkow**, *Judge.*

ARGUED JANUARY 12, 2021 — DECIDED JULY 7, 2021

Before EASTERBROOK, WOOD, and ST. EVE, *Circuit Judges.*

WOOD, *Circuit Judge.* Although many pension plans cover only the employees of one employer, in some industries multi-employer plans are common. But participating employers may come and go, and when a firm withdraws from the plan, there is a risk that the plan will be underfunded. The Employee Retirement Income Security Act (ERISA), as amended by the Multiemployer Pension Plan Amendments of

1980 (MPPAA), addresses that problem by requiring withdrawing employers to pay a sum that covers their liability for unfunded vested benefits attributable to their employees. See 29 U.S.C. §§ 1381(a), 1404(a) (defining "withdrawal liability"). Withdrawal liability applies to the withdrawing employer, but it also applies to "all trades or businesses (whether or not incorporated) that are under common control" with that employer. *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 894 (7th Cir. 2001) (internal quotations omitted); 29 U.S.C. § 1301(b)(1).

This case arose when Gradei's Express Co. withdrew from the Local 705 International Brotherhood of Teamsters Pension Fund. Gradei's asserted that it had ceased all operations covered by the governing multi-employer collective bargaining agreement and thus was no longer required to contribute to the Fund. The Fund responded with this lawsuit, in which it seeks to collect $221,932.55 in withdrawal liability from Gradei's. In addition to Gradei's, the Fund sued Anthony and Pat Pitello (Gradei's owners) and another Illinois corporation owned by the Pitellos (GX Warehousing), on the theory that they were trades or businesses under common control. The district court found that Gradei's was conducting its business rent-free on property owned by the Pitellos, and that this was enough to establish common control. It thus ruled in favor of the Fund with respect to all defendants. We affirm.

## I

In 2000, Anthony and Pat Pitello purchased the property at 2035 N. 15th Avenue, Melrose Park, Illinois ("Melrose Park Property") with their father, Pat M. Pitello. Gradei's and GX both used the property as their principal place of business, but the Pitellos never required either corporation to pay rent. In

February 2018, Gradei's ceased all operations. GX continued to use the property under the rent-free arrangement. After Gradei's moved out, GX (not the Pitellos) began leasing the property to an unrelated third party and collecting rent payments in the amounts of $2,800 per month. Later GX leased space to another third party for $19,000 per year. It signed the leases and collected the rents, but it never acquired any ownership interest in the property.

Because some of Gradei's employees were members of Local 705, Gradei's had been required to report and make contributions to the union's pension fund. That obligation ended in February 2018 when Gradei's ceased all operations covered by the CBA and thereby completely withdrew from the pension plan. See 29 U.S.C. § 1383. The Plan establishes defined pension benefits for eligible employees, and the Fund provides those benefits. The Plan also describes how the Fund must go about assessing and collecting withdrawal liability payments. If an employer defaults on those payments and legal action is required for collection, the Fund is entitled to recover several things: (1) interest on the assessed withdrawal liability at a rate of 8% per year from the date of the first missed payment, (2) the greater of liquated damages in the amount of interest on the unpaid liability or 20%, (3) court costs, and (4) attorneys' fees.

On March 2, 2018, the Fund sent Gradei's, GX, and the Pitellos (in their capacity as the owners of Gradei's principal place of business), a notice and demand for payment of the assessed withdrawal liability in the amount of $221,932.55. See 29 U.S.C. § 1399(b)(1). The notice contained payment options and advised Gradei's that it could request a review of the assessed withdrawal liability amount within 90 days of

the letter. Gradei's essentially ignored the demand—it did not request a review of the assessed amount or demand arbitration to contest the assessment, and no one began payment to the Fund. See 29 U.S.C. § 1401(a)–(b). On June 4, 2018, the Fund sent another notice informing Gradei's that it was delinquent on payment and had 60 days to respond. Gradei's again failed to do anything in response to the Fund's letters. It did, however, file for Chapter 7 Bankruptcy on June 8, 2018. The bankruptcy proceedings concluded on July 19, 2018. Gradei's has never suggested that the bankruptcy case affected its obligations to the Fund.

With no payment or response, the Fund filed this action against Gradei's on October 12, 2018, seeking withdrawal liability, interest, damages, court costs, and attorneys' fees. It also sued GX, Anthony Pitello, and Pat Pitello as trades or businesses under common control with Gradei's. The Fund then moved for summary judgment, arguing that the defendants had no legal basis to contest the withdrawal liability assessment, given their failure to request a review of the assessment or initiate arbitration. In a cross-motion for summary judgment, the Pitellos argued that their ownership of the Melrose Park Property and the activities there were not enough to support a finding of common control among the defendants. Instead, they asserted, the property was nothing but a passive investment. Gradei's and GX did not dispute liability. On April 24, 2020, the district court entered judgment against all defendants, awarding the Fund $312,252.04. After filing an unsuccessful motion to alter or amend the judgment on April 28, 2020, the Pitellos appealed.

**II**

"The purpose of § 1301(b)(1) 'is to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 549 (7th Cir. 2013) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 878 (7th Cir. 2013)). But Congress nonetheless drew a line between affiliated trades or businesses, on the one hand, and passive or personal investments, on the other. Withdrawal liability is intended to reach only the former, rather than "things like holding shares of stock or bonds in publicly traded corporations" or "[o]wning property … at least where the owner spends a negligible amount of time managing the leases." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 878–79 (7th Cir. 2011).

Since there is no statutory definition for "trade or business" in ERISA, we have looked elsewhere for guidance. For many years now we have used the test developed in *Commissioner v. Groetzinger*, 480 U.S. 23 (1987), which defines similar terms for tax purposes. We "construe the term 'trade or business' in light of the purpose of the MPPAA[:] … to prevent dissipation of assets required to secure vested pension benefits." *Cent. States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 890 (7th Cir. 1992) (quotation omitted).

To draw a workable line between activities that qualify as trades or businesses and those that do not, the *Groetzinger* test asks two questions: (1) whether the activity is for the primary purpose of income or profit; and (2) whether the activity is undertaken with continuity and regularity. *Nagy*, 714 F.3d at 550. If these criteria are met, the activity in question is considered a trade or business. Our holding in *SCOFBP* simplified

this inquiry further when it comes to leasing property: "leasing property to a withdrawing employer itself is categorically a 'trade or business.'" 668 F.3d at 879; *Nagy*, 714 F.3d at 547 ("[Defendant]'s leasing activity is categorically a trade or business for purposes of personal liability under § 1301(b)(1)."); see also *Messina*, 706 F.3d at 881 ("[R]enting property to a withdrawing employer is 'categorically' a trade or business … .").

In *Messina* we explained why a more fact-specific inquiry is unnecessary in the leasing context:

> But where the real estate is rented to or used by the withdrawing employer and there is common ownership, it is improbable that the rental activity could be deemed a truly passive investment. In such situations, the likelihood that a true purpose and effect of the "lease" is to split up the withdrawing employer's assets is self-evident. We see no reason why that principle should not apply here.

706 F.3d at 882.

The Pitellos contend that their situation is one of the "improbable" ones to which that passage alludes: they insist that their ownership of the Melrose Park Property is "really" a passive investment and thus the categorical rule should not apply. In support of that position, they offer a number of facts: they purchased the property for investment purposes with their father in 2000, 18 years before Gradei's ceased operations; they did not receive tax benefits, exemptions, or deductions as a result of Gradei's use of the property; they never received or used any rent payments; they did not perform

leasing activities after Gradei's left (though GX did); and they never employed anyone to manage the property.

We do not disagree with the Pitellos that evidence can rebut the presumption that leasing property to a withdrawing employer is a trade or business. But the Pitellos have failed to do that. The problem with their list is that it omits other details that undermine their position, and it does not recognize the economic equivalence between a return on investment in the form of rent collection and return on investment in the form of dividends or salaries made possible by the absence of any rent obligation. Land owned by a firm's equity investors and used by that firm in its business is itself a form of equity investment in the firm. Logically that means that the land should be treated as part of the business.

Absent persuasive evidence that does not appear in this record, "the inescapable conclusion is that the [defendant]s' leasing activity was simply an extension of the business operations of … the withdrawing employer, [*sic*] and was a means to fractionalize [the withdrawing employer]'s assets." *Messina*, 706 F.3d at 883; see, *e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 894 (7th Cir. 2001) ("[Defendants] also offered an expert witness in the real estate market who opined that the triple net leases were economically identical to passive investments such as stocks or bonds.").

The Pitellos, with their father, provided office and storage space exclusively to companies that they own. Far from incurring nothing of value, the Pitellos and their businesses all reaped benefits from this arrangement. The Pitellos secured workspace for their businesses and known tenants for their property. The fact that GX, a company owned by the Pitellos, began leasing the property and collecting rent payments only

*after* Gradei's withdrew does not suggest that the Pitellos were passive investors. To the contrary, it is a strong indicator that whatever value the Pitellos received through their rent-free arrangement with Gradei's had been lost upon Gradei's failure as a business venture. Without evidence to the contrary, the logical inference is that the rent-free arrangement protected Gradei's, GX, and the Melrose Park Property, all trades or business under the Pitellos' control. Nothing in *Groetzinger* compels a different conclusion.

## III

Anthony and Pat Pitello were engaged in a trade or business under common control with Gradei's because of their ownership of the Melrose Park Property and Gradei's use of that property rent-free. We presume that the activity of leasing property to a withdrawing employer is a trade or business, and the Pitellos have not rebutted that presumption. The district court thus correctly found Anthony Pitello and Pat Pitello personally liable for Gradei's withdrawal liability, along with Gradei's and GX. The judgment of the district court is AFFIRMED.